# UNITED STATES DISTRICT COURT

### for the
### District of Connecticut

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )   Case No. |
| | ) |
| Stag Arms LLC | ) |
| 119 John Downey Drive, including outbuildings | ) |
| New Britain, CT 06051 | ) |
| (more particularly described in Attachment A) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ Connecticut _____
*(identify the person or describe the property to be searched and give its location)*:
Stag Arms, LLC, 119 John Downey Drive, New Britain, CT 06051, including outbuildings (more particularly described in Attachment A)

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: evidence, fruits and instrumentalities of violation of Title 18 U.S.C. Section 923(i)(failure to serialize/mark firearms) and 18 U.S.C. Section 922(m)(failure to maintain proper records of firearm manufacture, acquisition and disposition), see Attachment B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before   9/16/14 _____
                                                                                                              *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge Hon. Thomas P. Smith _____ .
                                              *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐for _____ days *(not to exceed 30)*.
                                              ☐until, the facts justifying, the later specific date of _____ .

Date and time issued:  9/2/14 5:26 pm _____        *Thomas P. Smith*
                                                                                                              *Judge's signature*

City and state:     Hartford, CT _____        Hon. Thomas P. Smith, United States Magistrate Judge
                                                                                                              *Printed name and title*

# UNITED STATES DISTRICT COURT

for the

District of Connecticut

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Stag Arms, LLC<br>119 John Downey Drive (including outbuildings)<br>New Britain, CT 06051<br>(more particularly described in Attachment A) | )<br>)<br>)<br>)    Case No.    (TPS)<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Stag Arms LLC, 119 John Downey Drive, New Britain, CT 06051 (more particularly described in Attachment A)

located in the _____ District of _____ Connecticut _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Evidence of a violation of 18 U.S.C. Section 923(i)(failure to serialize/mark firearms); and 18 U.S.C. Section 922(m) (failure to maintain proper records of firearm manufacture, acquisition and disposition).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 923(i) | Failure to serialize/mark firearms |
| 18 U.S.C. Section 922(m) | Failure to maintain records of firearm manufacture, acquisition and disposition |

The application is based on these facts:
See attached affidavit of Joanna Lambert dated September 2, 2014.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

x *Joanna B. Lambert*
*Applicant's signature*

Joanna Lambert, Special Agent, BATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/2/14

*Thomas P. Smith*
*Judge's signature*

City and state: Hartford, Connecticut

Hon. Thomas P. Smith, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## DESCRIPTION OF PROPERTY TO BE SEARCHED

The property to be searched is 119 John Downey Drive, New Britain, Connecticut, which is more particularly described as a single story white concrete block and beige weathered brick commercial structure with a flat roof on the east side of John Downey Drive. There is a white sign with blue letters "CMT" on the west side of the building next to the roadway. There are several doors on the north side of the building, three (3) gray metal doors with windows, as well as three (3) brown overhead doors. The two (2) brown overhead doors in the eastern portion are clearly marked "shipping" and "receiving" with blue signs and white lettering. There is a concrete stairway containing seven (7) steps just to the east of the shipping and receiving overhead doors. The stairway leads to a gray metal door and there is a window just to the west of the door. The third brown overhead door is located in the center of the north side of the building. There is a gray metal door with a white awning just to the east. The third gray metal door is located on the western portion of north side of the building. The driveway and parking area are to the north of the building. There are security cameras located on the northeast and northwest corners of the building.

There is a single outbuilding in southeast portion of the property. It is a tan metal structure with a gable metal roof and 3 brown overhead doors facing north.

# ATTACHMENT B

## DESCRIPTION OF THE ITEMS TO BE SEIZED

1. Approximately 3000 un-serialized receivers bearing the markings "Stag Arms, New Britain, CT, USA, Model Stag 15, CAL 5.56mm" .

2. Information and Documents: Any and all information, documents or items in paper or electronic form (including computers and storage media) relating in any way to violations of federal firearms laws and regulations, including 18 U.S.C. Section 922(m) and 18 U.S.C. Section 923(i), identified in the attached affidavit including, but not limited to, serializer log books, production records and FFL's acquisition and disposition records.

3. Identity and personnel records of all individuals responsible for serialization of firearms, to include attendance logs and leave records of those individuals.

4. Unlawful Firearms: Any and all firearms the possession of which is illegal under state or federal law and/or not in compliance with federal law and regulations concerning the manufacture and sale of firearms.

5. Photographs and Video: Any and all photographs, video, surveillance tapes or other visual depictions of firearms or other materials relating to violations of the aforementioned statutes. I further seek authority for agents executing

the search warrant to take photographs and/or videotape of the premises and
areas searched.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

STATE OF CONNECTICUT          :
                                        ss: Hartford, CT
                              :
                                        September 2, 2014
COUNTY OF HARTFORD            :

A F F I D A V I T

I, Joanna Lambert, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and

Explosives, having been duly sworn, deposes and states as follows:

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF"), and have been so employed since August 2001.  I am currently assigned to

the Hartford, CT Field Office.  Prior to my employment with ATF, I was employed by the

Windsor Police Department in Windsor, Connecticut for 5 ½ years as a police officer.  Prior to

that, I was employed by the Fairfield Police Department in Fairfield, Connecticut for 1 ½ years

as a police officer.

2.      During the course of my career, I have participated in hundreds of criminal

investigations, including investigations into suspected narcotics and firearms trafficking.  My

participation in the investigations has included coordinating controlled purchases of firearms and

narcotics utilizing confidential informants, cooperating witnesses and undercover law

enforcement officers; coordinating the execution of search and arrest warrants; conducting

electronic and physical surveillance; analyzing records related to firearms and narcotics

trafficking; testifying in Grand Jury and District Court proceedings; and interviewing individuals

1

and other members of law enforcement regarding the manner in which firearms and narcotics traffickers obtain, finance, store, manufacture, transport and distribute contraband.

3.      I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I am the case agent on the investigation that is the subject of this affidavit and have personally participated in the investigation concerning violations of the federal laws listed in this affidavit.

4.      This affidavit is submitted in support of a search warrant to search for and seize firearms subject to the Amended Gun Control Act of 1968, currently stored at the Federal Firearm Licensee Stag Arms LLC, a firearms manufacturer located at 119 John Downey Dr., New Britain, CT that are un-serialized to wit: approximately 3000 lower receivers marked "Stag Arms, New Britain, CT, USA" on the left side of the magazine well and "Model Stag 15, CAL 5.56mm" above the trigger guard, but do not bear a serial number anywhere on the receiver. I should note that 119 John Downey Drive has an outbuilding shed.

5.      The Amended Gun Control Act of 1968 defines a firearm as *"...any weapon (including a starter gun) which will or is designed to or may be readily converted to expel a projectile by the action of an explosive...[and]...the frame or receiver of any such weapon."* *See* 18 U.S.C § 921(a)(3). It is required that firearms manufacturers identify each firearm with a serial number, in such manner as the Attorney General shall by regulations provide. *See* 18 U.S.C. § 923(i)). It is also required that licensed manufacturers record the serial number of each complete firearm manufactured or otherwise acquired not later than the seventh day following

the date of manufacture/acquisition pursuant 27 C.F.R. § 478.123(a). Furthermore, it is required that Federal Firearms Licensed Manufacturers maintain records of firearms manufacture, acquisition and disposition. *See* 18 U.S.C. § 922(m), 27 CFR § 478.123(a), 27 CFR § 478.123 (b) and ATF Ruling 2012-1.

6. This affidavit sets forth facts and evidence that are relevant to the requested search warrant, but does not set forth all the facts and evidence that I have gathered during the course of the investigation of this matter. The statements contained in this affidavit are based, in part, on information provided by personnel of the ATF and information acquired through review of documents.

7. I have personally participated in this investigation. As a result of my participation in this investigation and the analysis of reports submitted by ATF, I am familiar with all aspects of this investigation. The information contained in this affidavit is based on this familiarity, and on information which I have reviewed and determined to be accurate and reliable. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish the foundation necessary to support the requested search warrant.

8. During the months of July and August of 2014, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Industry Operations Investigators (IOIs) performed a firearms compliance inspection of Federal Firearm Licensee, Stag Arms, LLC's two manufacturing facilities located at 119 John Downey Drive and 515 John Downey Drive, New Britain, CT. Stag Arms is a federal firearms licensee ("FFL") with license #6-06-003-07-5L-00729. Stag

Arms is owned and operated by Mark Malkowski. The Stag Arms location at 119 John Downey Drive is also co-located with Continental Machine Tool ("CMT"), another FFL. CMT is owned by Mark Malkowski's father, Tadeusz ("Ted") Malkowski. During inspection of both FFLs, ATF IOIs discovered numerous violations of federal firearms laws and regulations.

9.     During the inspection of Stag Arms at 119 John Downey, IOIs located approximately 3000 receivers that are regulated by the Amended Gun Control Act of 1968 that were manufactured by Stag Arms. These receivers were not serialized. During the inspection, Ted Malkowski, the owner of CMT, originally stated to ATF IOI Timothy Gahm that CMT had manufactured the aforementioned un-serialized receivers. The owner of Stag Arms, Mark Malkowski then told IOI Gahm the firearms were manufactured by Stag. The receivers were marked "Stag Arms, New Britain CT, USA." Tadeusz Malkowski also advised IOI Gahm during the inspection on July 15, 2014 that the un-serialized receivers had been on the premises for more than 7 days and up to 30 days because the employee that does the serializing was on vacation. IOI Gahm initially observed the un-serialized receivers on July 15, 2014 during the inspection. Seven days later on July 22, 2014, your affiant and IOI Gahm again observed the un-serialized receivers at the premises.

10.     A sample of the aforementioned approximately 3000 un-serialized receivers was retained and forwarded to the ATF Firearms Technology Branch for Technical Analysis. Based on the analysis, the FTB determined the submitted sample was a "firearm" as defined in 18 U.S.C. § 921(a)(3).

11.     During the inspection, no ATF compliant firearm manufacturing or disposition records were located at the premises of 119 John Downey Dr., New Britain, CT, for the

aforementioned receivers or for any other firearms produced at that location.

12.    Accordingly, based on the foregoing, there is probable cause to believe, and I do believe that, evidence, fruits and instrumentalities pertaining to violations of 18 U.S.C § 923(i), 18 § U.S.C. 922(m) and 27 CFR § 123(a) as set forth in greater detail in Attachment B, are now located within the above-described subject premises, described more specifically in Attachment A, both of which are appended to the applications for search and seizure warrants for the subject premises and incorporated herein by reference.  I also know from my training and experience that FFLs who engage in unlawful transactions, sales and transfers of firearms often keep records, documents and property which constitute evidence, fruits of such crime, and/or contraband such as those items which are described in greater detail in Attachment B, at their place of business.  Furthermore, in light of the foregoing, and based on my training and experience I know that FFLs who engage in unlawful transactions, sales and transfers of firearms and/or who secure, obtain or possess certain types of illegal firearms often keep a separate set of books, whether via computer or otherwise, to keep track of such unlawful activity, at their place of business.  Given the history of violations as to both Stag Arms and CMT and the extensive and pervasive violations· of federal firearms laws and regulations, it is my belief that such violations are continuing at the present time.  Accordingly, with respect to the premises described in Attachment A, I respectfully seek authority to search for any and all records, documents and information – in paper, electronic or other form – relating to violations of the statutes identified above, including the following:

a.   Information and Documents:  Any and all information, documents or items relating in any way to violations of the statutes identified above including, but

not limited to, serializer log books, production records and FFL's acquisition and disposition records.

b.  Identity and personnel records of all individuals responsible for serialization of firearms, to include attendance logs and leave records of those individuals.

c.  Unlawful Firearms: Any and all firearms the possession of which is illegal under state or federal law.

d.  Photographs and Video: Any and all photographs, video, surveillance tapes or other visual depictions of firearms or other materials relating to violations of the aforementioned statutes. I further seek authority for agents executing the search warrant to take photographs and/or videotape of the premises and areas searched.

## COMPUTERS, ELECTRONIC STORAGE AND FORENSIC ANALYSIS

13. As described above and in the attachment, this application seeks permission to search for records that might be found on the identified premises, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive, electronic storage devices or other storage media as explained above. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e) (2) (B).

14. Based on my training and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.

This information can sometimes be recovered with forensics tools.

15.     I submit that if computers, electronic storage devices or storage media as described above are found on the premises, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

   a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

   b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space-that is, in space on the storage medium that is not currently being used by an active file-for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

   c.  Wholly apart from user-generated files, computer storage media-in particular, computers' internal hard drives-contain electronic evidence of how a computer has been used, what it has been used for, and who

has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

16. Forensic Evidence. As further described in the attachments, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how any computers, electronic storage devices and other storage media were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any computer, electronic storage device or storage medium located on or in the premises because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what

tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. Forensic evidence on a computer or storage medium can also indicate who has used or controlled the computer or storage medium. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time.

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use,

who used them, and when.

d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f.  I know that when an individual uses a computer to further criminal activity, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal

offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

17. <u>Necessity of seizing or copying entire computers or storage media</u>. In most cases, a thorough search for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer, electronic storage device or other storage media has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained

above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine `storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to `attempt on-site.

    b. Technical requirements. Computers, electronic storage devices or other storage media can be configured in several different ways, featuring a variety of different operating systems, application software, `and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be `required to analyze the system and its data on the premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

    c. `Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

18.     Nature of examination. Based on the foregoing, and consistent with Rule

41(e)(2)(B), the warrants I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

19. Because several people work at the business that is the subject of this warrant, it is possible that the subject premises will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

20. Finally, I request that this affidavit, the search warrant application, and the search warrant, along with the materials attached hereto, be sealed until further order of the Court since disclosure of these materials at this time would seriously jeopardize the ongoing investigation. The government further asks the Court to direct the United States Attorney's Office to maintain this affidavit, the search warrant application, and the search warrant, along with the materials attached hereto in its possession until the Court orders that the documents be filed with the Clerk of the Court or until the matter under investigation has become public.

21.     The foregoing is true and correct to the best of this Applicant's knowledge.

JOANNA LAMBERT
SPECIAL AGENT
BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES

Subscribed and sworn to before me this 2nd day of September 2014, at Hartford, Connecticut.

HONORABLE THOMAS P. SMITH
UNITED STATES MAGISTRATE JUDGE

–14–

## DESCRIPTION OF PROPERTY TO BE SEARCHED

The property to be searched is 119 John Downey Drive, New Britain, Connecticut, which is more particularly described as a single story white concrete block and beige weathered brick commercial structure with a flat roof on the east side of John Downey Drive. There is a white sign with blue letters "CMT" on the west side of the building next to the roadway. There are several doors on the north side of the building, three (3) gray metal doors with windows, as well as three (3) brown overhead doors. The two (2) brown overhead doors in the eastern portion are clearly marked "shipping" and "receiving" with blue signs and white lettering. There is a concrete stairway containing seven (7) steps just to the east of the shipping and receiving overhead doors. The stairway leads to a gray metal door and there is a window just to the west of the door. The third brown overhead door is located in the center of the north side of the building. There is a gray metal door with a white awning just to the east. The third gray metal door is located on the western portion of north side of the building. The driveway and parking area are to the north of the building. There are security cameras located on the northeast and northwest corners of the building.

There is a single outbuilding in southeast portion of the property. It is a tan metal structure with a gable metal roof and 3 brown overhead doors facing north.

## **DESCRIPTION OF THE ITEMS TO BE SEIZED**

1.  Approximately 3000 un-serialized receivers bearing the markings "Stag Arms, New Britain, CT, USA, Model Stag 15, CAL 5.56mm" .

2.  Information and Documents:  Any and all information, documents or items in paper or electronic form (including computers and storage media) relating in any way to violations of federal firearms laws and regulations, including 18 U.S.C. Section 922(m) and 18 U.S.C. Section 923(i), identified in the attached affidavit including, but not limited to, serializer log books, production records and FFL's acquisition and disposition records.

3.  Identity and personnel records of all individuals responsible for serialization of firearms, to include attendance logs and leave records of those individuals.

4.  Unlawful Firearms: Any and all firearms the possession of which is illegal under state or federal law and/or not in compliance with federal law and regulations concerning the manufacture and sale of firearms.

5.  Photographs and Video:  Any and all photographs, video, surveillance tapes or other visual depictions of firearms or other materials relating to violations of the aforementioned statutes.  I further seek authority for agents executing

the search warrant to take photographs and/or videotape of the premises and areas searched.

# UNITED STATES DISTRICT COURT

for the

District of Connecticut

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No. |
| | ) | |
| Stag Arms LLC | ) | |
| 515 John Downey Drive, including outbuildings | ) | |
| New Britain, CT 06051 | ) | |
| (more particularly described in Attachment A) | | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

        An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____Connecticut_____
*(identify the person or describe the property to be searched and give its location)*:
Stag Arms, LLC, 515 John Downey Drive, New Britain, CT 06051, including outbuildings (more particularly described in Attachment A)

        The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
evidence, fruits and instrumentalities of violation of Title 26, United States Code Section 5861(d)(possession of unregistered NFA firearm); 18 U.S.C. Section 923(i)(failure to serialize/mark firearms) and 18 U.S.C. Section 922(m) (failure to maintain proper records of firearm manufacture, acquisition and disposition), see Attachment B.

        I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

        **YOU ARE COMMANDED** to execute this warrant on or before   9/16/14 _____
        *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been established.

        Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

        The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
Hon. Thomas P. Smith _____ .
        *(name)*

        ☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*   ☐ for _____ days *(not to exceed 30).*
                                        ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:  9/2/14  5:44 pm          *Thomas P. Smith*
                                                        *Judge's signature*

City and state:     Hartford, CT          _____Hon. Thomas P. Smith, United States Magistrate Judge_____
                                                        *Printed name and title*

# UNITED STATES DISTRICT COURT

for the

District of Connecticut

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Stag Arms, LLC<br>515 John Downey Drive, including outbuildings<br>New Britain, CT 06051<br>(more particularly described in Attachment A) | )<br>)<br>)<br>)<br>)<br>) Case No.　　　　　(TPS) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Stag Arms, LLC, 515 John Downey Drive, New Britain, CT 06051, including outbuildings (more particularly described in Attachment A)

located in the _____ District of _____Connecticut_____ , there is now concealed *(identify the person or describe the property to be seized)*:

Evidence of a violation of Title 26, United States Code Section 5861(d)(possession of unregistered NFA firearm); 18 U.S.C. Section 923(i)(failure to serialize/mark firearms); and 18 U.S.C. Section 922(m)(failure to maintain proper records of firearm manufacture, acquisition and disposition).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 26, U.S.C. Section 5861(d) | Possession of unregistered NFA firearm |
| 18 U.S.C. Section 923(i) | Failure to serialize/mark firearms |
| 18 U.S.C. Section 922(m) | Failure to maintain records of firearm manufacture, acquisition and disposition |

The application is based on these facts:
See attached affidavit of Joanna Lambert dated September 2, 2014.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Joanna Lambert, Special Agent, BATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  9/2/14

_____
*Judge's signature*

City and state:  Hartford, Connecticut

Hon. Thomas P. Smith, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## DESCRIPTION OF PROPERTY TO BE SEARCHED

The property to be searched is 515 John Downey Drive, New Britain, Connecticut, which is more particularly described as a single story brown brick and beige accented commercial structure with a flat roof on the east side of John Downey Drive. There is a set of baseball fields directly across the street. There are three (3) windows on the west side of the building closest to John Downey Drive. There are three (3) additional windows on the west side of the building further south. This portion of the building is set back further off the street. These three (3) windows also have black metal security bars over them. The numbers "515" are clearly marked with black letters facing west on a white overhang that extends off of the southwest corner of the building. There is a lobby area located underneath the overhang in the southwest corner of the building facing south. There is a glass door into the lobby surrounded by windows. These windows and this door are covered with black metal security bars. The driveway and parking area are located to the south of the building. 533 John Downey Drive is located immediately to the north of this building.

# ATTACHMENT B

## DESCRIPTION OF THE ITEMS TO BE SEIZED

a.  Information and Documents: Any and all information, documents or items in whatever form relating in any way to violations of the statutes identified above including, but not limited to, the FFL's acquisition and disposition records; the FFL's ATF Form 4473 records; any and all records relating to any theft, loss or missing firearms of the FFL; any and all records of internal inventories conducted by the FFL including; any and all records relating to the FFL's NICS background checks and related State of Connecticut documents; any and all records regarding shipments made by the FFL via the U.S. Mail, Federal Express or any other common carrier; any and all records regarding multiple sales made by the FFL; and any and all records regarding purchases or attempted purchases by prohibited persons.

b.  Address books, daily planners, rolodexes, etc., to include contact information for possible transferees or other FFL's to whom items may have been transferred.  These materials include electronic devices that are capable of analyzing, displaying, converting, or transmitting electronic impulses or data and the contents therein, daily calendars, and lists of names and phone numbers.

c.  Financial Records: Any and all financial documents reflecting acquisitions, dispositions, transactions, sales, and inventory or otherwise reflecting the flow of firearms in and out of Stag Arms, LLC, including sales receipts, credit card receipts, register tapes, accounts receivables, bank account statements, checks,

deposit items, withdrawal items, insufficient-funds notices, cashier's checks, money orders, canceled checks, safe deposit box records and safe deposit box keys, financial statements, balance sheets, ledgers, and invoices.

d. Tax Returns and records: Any and all records and documents relating to any tax returns for Stag Arms, LLC, reflecting any income made from the operation of Stag Arms, LLC or the absence thereof, including copies of state and federal income tax returns and records related to the preparation of state and federal income tax returns.

e. Unlawful Firearms: Any and all firearms the possession of which is illegal under state or federal law and/or not in compliance with federal law and regulations concerning the manufacture and sale of firearms.

f. Photographs and Video: Any and all photographs, video, surveillance tapes or other visual depictions of firearms or other materials relating to violations of the aforementioned statutes. I further seek authority for agents executing the search warrant to take photographs and/or videotape of the premises and areas searched.

g. Computers, Computer Hardware, Storage Devices and Electronic Documents.

STATE OF CONNECTICUT          :

                                       ss: Hartford, CT

                               :

                                         September 2, 2014

COUNTY OF HARTFORD          :

## A F F I D A V I T

I, Joanna Lambert, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and

Explosives, having been duly sworn, deposes and states as follows:

      1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF"), and have been so employed since August 2001.  I am currently assigned to

the Hartford, CT Field Office.  Prior to my employment with ATF, I was employed by the

Windsor Police Department in Windsor, Connecticut for 5 ½ years as a police officer.  Prior to

that, I was employed by the Fairfield Police Department in Fairfield, Connecticut for 1 ½ years

as a police officer.

      2.      During the course of my career, I have participated in hundreds of criminal

investigations, including investigations into suspected narcotics and firearms trafficking.  My

participation in the investigations has included coordinating controlled purchases of firearms and

narcotics utilizing confidential informants, cooperating witnesses and undercover law

enforcement officers; coordinating the execution of search and arrest warrants; conducting

electronic and physical surveillance; analyzing records related to firearms and narcotics

trafficking; testifying in Grand Jury and District Court proceedings; and interviewing individuals

1

and other members of law enforcement regarding the manner in which firearms and narcotics traffickers obtain, finance, store, manufacture, transport and distribute contraband.

3.      I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I am the case agent on the investigation that is the subject of this affidavit and have personally participated in the investigation concerning violations of the federal laws listed in this affidavit.

4.      This affidavit is submitted in support of a search warrant to search for and seize firearms subject to the Amended Gun Control Act of 1968 (GCA), as well as the National Firearms Act (NFA) currently stored at the Federal Firearm Licensee Stag Arms LLC (STAG), a firearms manufacturer located at 515 John Downey Dr., New Britain, CT that are un-serialized to wit: approximately 158 lower receivers. Some of these were marked "Stag Arms, New Britain, CT, USA" on the left side of the magazine well and "Model Stag 15, CAL 5.56mm" above the trigger guard; while some of these were various other models and calibers. There were approximately 20 of these receivers that bore no markings whatsoever. Further, there were approximately 22 un-serialized lower receivers (machine guns) marked "Stag Arms, New Britain, CT, USA" on the left side of the magazine well and "Model Stag 16, CAL 5.56mm" above the trigger guard. There were also four lower machine gun receivers, bearing serial numbers FF00016, FF00017, FF00018 and FF00019, respectively, each marked "Stag/FerFrans, Model SOAR, CAL 5.56".

5.      I am currently investigating allegations that Stag Arms, has committed multiple

−2−

violations of federal firearm laws and regulations, to include: (1) 18 U.S.C. § 922(m) (making false entries in, failing to make appropriate entries in, and failing to properly maintain, federal firearms records); (2) 18 U.S.C. § 923(i) and 27 CFR 478.92 (failure to serialize and place required markings on firearms; (3) 26 U.S.C. 5861(i) (failure to serialize NFA firearms); and (4) 26 U.S.C. 5861(d) (possession of NFA firearms not registered to the FFL).

6. The Amended Gun Control Act of 1968 defines a firearm as *"...any weapon (including a starter gun) which will or is designed to or may be readily converted to expel a projectile by the action of an explosive ... [and] ... the frame or receiver of any such weapon"* (see 18 U.S.C § 921(a)(3)). It is required that firearms manufacturers identify each firearm with a serial number, in such manner as the AG shall by regulations provide (*see* 18 U.S.C. § 923(i)). It is also required that licensed manufacturers record the serial number of each complete firearm manufactured or otherwise acquired not later than the seventh day following the date of manufacture/acquisition (*see* CFR § 478.123(a)). Furthermore, it is required that Federal Firearms Licensed Manufacturers maintain records of firearms manufacture, acquisition and disposition (*see* 18 U.S.C. § 922(m), 27 CFR § 478.123(a) and 27 CFR § 478.123 (b)) and ATF Ruling 2012-1).

7. The National Firearms Act defines a firearm in part as "..... (6) a *machine gun (see* 26 U.S.C. § 5856(a)). The term 'machine-gun' means any weapon which shoots, is designed to shoot, or can readily be restored to shoot, automatically more than one shot, without manual reloading, by a single pull of the trigger. The term shall also include the frame or receiver of any such weapon (*see* 26 U.S.C. § 5845(b) and 18 U.S.C. Section 921(a)(3)). It is required that firearms manufacturers identify each firearm with a serial number, in such manner as the AG

–3–

shall by regulations provide (*see* 26 U.S.C. § 5842(a)). It is also required that licensed manufacturers record the serial number of each complete firearm manufactured or otherwise acquired no later than the seventh day following the date of manufacture/acquisition (*see* CFR § 478.123(a)). Furthermore, it is required that Federal Firearms Licensed Manufacturers maintain records of firearms manufacture, acquisition and disposition (*see* 18 U.S.C. § 922(m), 27 CFR § 478.123(a) and 27 CFR § 478.123 (b)) and ATF Ruling 2012-1).

8. The National Firearms Act (NFA) applies only to certain firearms and weapons, including, but not limited to: machine guns, silencers, short-barreled rifles, and short-barreled shotguns. *See* 26 U.S.C. §5845. The NFA directs the ATF to maintain a registry of all NFA-regulated firearms and weapons in the United States which are not under the possession or control of the United States government. *See* 26 U.S.C. §5841. The NFA provides that it is unlawful for any person (or entity) to receive or possess any NFA-regulated firearm or weapon that is not registered to him or her (or it). *See* 26 U.S.C. §5861(d). Furthermore, before any NFA-regulated firearm or weapon is transferred from one person (or entity) to another, the transferor and transferee must complete an application form, the form must be approved by ATF, and the transferor must pay a transfer tax of $200. *See* 26 U.S.C. §§5811-5812. Any firearm or weapon in violation of the NFA is subject to seizure and forfeiture by the United States. *See* 26 U.S.C. § 5872.

9. This affidavit sets forth facts and evidence that are relevant to the requested search warrant, but does not set forth all the facts and evidence that I have gathered during the course of the investigation of this matter. The statements contained in this affidavit are based, in part, on information provided by personnel of the ATF and information acquired through review

of documents.

10.     I have personally participated in this investigation.  As a result of my participation in this investigation and the analysis of reports submitted by ATF, I am familiar with all aspects of this investigation.  The information contained in this affidavit is based on this familiarity, and on information which I have reviewed and determined to be accurate and reliable.  Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are essential to establish the foundation necessary to support the requested search warrant.

11.     During the months of July and August of 2014, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Industry Operations Investigators (IOIs) performed a firearms compliance inspection on a Federal Firearm Licensee, Stag Arms, LLC, a firearms manufacturer located at 515 John Downey Dr., New Britain, CT.

12.     During the inspection of Stag, IOIs located approximately 136 receivers that are regulated by the Amended Gun Control Act of 1968 that were manufactured by Stag Arms.  These receivers were not serialized.  During the inspection, the Plant Manager of Stag Arms, Veetek Witkowski, stated to ATF Industry Operations Investigator (IOI) Timothy Gahm that these un-serialized receivers had been at Stag for as long as a few years and that the receivers were not serialized in order to duplicate serial numbers of firearms or receivers that were damaged (in violation of 18 U.S.C. § 923(i) and 27 CFR § 478.92).  Furthermore, the current ATF inspection revealed that Stag was manufacturing receivers at 119 John Downey Drive, New Britain, CT and had been doing so at least since 2011.  Licensed firearms manufacturers must

mark and serialize all completed firearms (including receivers) prior to it being sold, shipped or otherwise disposed of (*see* 18 U.S.C. § 923(i) and 27 CFR § 478.92). Therefore, these receivers were manufactured at 119 John Downey Dr. and transported to 515 John Downey Dr. while bearing no serial number(s), in violation of the aforementioned statute and regulation.

13.     A sample of the aforementioned 136 un-serialized receivers was retained and forwarded to the ATF Firearms Technology Branch (FTB) for Technical Analysis. Based on the analysis, the FTB determined the submitted sample was a "firearm" as defined in 18 U.S.C. § 921(a)(3).

14.     During the inspection of Stag, IOIs located approximately 22 machine gun receivers that are regulated by the National Firearms Act that were manufactured by Stag Arms. These machine gun receivers were not serialized as required by 26 U.S.C. § 5842(a) and 27 CFR § 479.102(a). These machine gun receivers were also not registered with ATF as required by 26 U.S.C. § 5841(c) and 27 CFR § 479.103. The current ATF inspection revealed that Stag was manufacturing receivers at 119 John Downey Drive, New Britain, CT. Licensed firearms manufacturers must mark and serialize all completed firearms (including receivers) prior to it being sold, shipped or otherwise disposed of (see 18 U.S.C. § 923(i) and 27 CFR § 478.92).

14.     During the inspection, 4 machinegun receivers were located, bearing serial numbers FF00016, FF00017, FF0018 and FF0019, respectively. A query of the ATF National Firearm Registration Transfer Records determined that these firearms are unregistered (*see* 26 U.S.C. § 5861(d)).

15.     During the inspection, no ATF compliant firearm manufacturing or disposition records were located at the premises 515 John Downey Dr., New Britain, CT, for the

aforementioned receivers as required by 18 U.S.C. § 922(m) and 27 CFR § 478.92.

16. During the inspection of Stag Arms LLC, it was also discovered by ATF IOIs that Stag was manufacturing firearms for another Federal Firearms Licensee (FFL), Smith & Wesson (S&W). While Stag Arms had received approval to manufacture firearms for S&W and place S&W required markings on these firearms (pursuant to a variance issued by ATF in 2005 in accordance with 27 CFR § 478.22), it was learned that Stag Arms had manufactured firearms for S&W and placed their required markings on these firearms but had not delivered these to S&W as required by the variance. Stag Arms by manufacturing these firearms and failing to mark these firearms with their own manufacturers marks of identification and unique serial numbers committed violations of 18 U.S.C. § 923(i) and 27 CFR § 478.92. Furthermore, the transfer of these firearms to an FFL other than S&W may make these firearms untraceable by law enforcement.

17. By way of example, on or about June 30, 2007, Stag Arms manufactured S&W, Model M&P 15 rifles, serial numbers SW14303 & SW 14410, and on June 30, 2008, transferred these firearms to another FFL, Continental Machine Tool Co (FFL# 606003070H35688, located at 533 John Downey Drive, New Britain, CT 06051). Additionally, on or about June 30, 2007, Stag Arms manufactured S&W, Model M&P 15 rifles, serial numbers SW14769, SW14944, and SW15039, and on June 30, 2008, transferred these firearms to another FFL, Continental Machine Tool Co (FFL# 606003070H35688).

18. Based on the foregoing, as well as my training and experience, I know that FFLs who engage in unlawful transactions, sales and transfers of firearms often keep records, documents and property which constitute evidence, fruits of such crime, and/or contraband such

as those items which are described in greater detail in Attachment B, at their place of business. Furthermore, in light of the foregoing, and based on my training and experience I know that FFLs who engage in unlawful transactions, sales and transfers of firearms and/or who secure, obtain or possess certain types of illegal firearms often keep a separate set of books, whether via computer or otherwise, to keep track of such unlawful activity, at their place of business.

19. Accordingly, based on the foregoing, there is probable cause to believe, and I do believe that, evidence, fruits and instrumentalities pertaining to violations of 18 U.S.C § 923(i), 18 § U.S.C. 922(m) and 27 CFR § 123(a)& (b), 18 U.S.C. § 924(a)(1)(A) as well as 26 U.S.C. § 5861 (i), and 26 U.S.C. § 5861(d) as set forth in greater detail in Attachment B, are now located within the above-described subject premises, described more specifically in Attachment A, both of which are appended to the applications for search and seizure warrants for the subject premises and incorporated herein by reference. Given the extensive and pervasive violations of federal firearms laws and regulations occurring here, it is my belief that such violations are continuing at the present time. Accordingly, with respect to the premises described in Attachment A, I respectfully seek authority to search for any and all records, documents and information – in paper, electronic or other form – relating to violations of the statutes identified above, including the following:

a. Information and Documents: Any and all information, documents or items in whatever form relating in any way to violations of the statutes identified above including, but not limited to, the FFL's acquisition and disposition records; the FFL's ATF Form 4473 records; any and all records relating to any theft, loss or missing firearms of the FFL; any and all records of internal

–8–

inventories conducted by the FFL including; any and all records relating to the FFL's NICS background checks and related State of Connecticut documents; any and all records regarding shipments made by the FFL via the U.S. Mail, Federal Express or any other common carrier; any and all records regarding multiple sales made by the FFL; and any and all records regarding purchases or attempted purchases by prohibited persons.

b. Address books, daily planners, rolodexes, etc., to include contact information for possible transferees or other FFL's to whom items may have been transferred. These materials include electronic devices that are capable of analyzing, displaying, converting, or transmitting electronic impulses or data and the contents therein, daily calendars, and lists of names and phone numbers.

c. Financial Records: Any and all financial documents reflecting acquisitions, dispositions, transactions, sales, and inventory or otherwise reflecting the flow of firearms in and out of Stag Arms, LLC, including sales receipts, credit card receipts, register tapes, accounts receivables, bank account statements, checks, deposit items, withdrawal items, insufficient-funds notices, cashier's checks, money orders, canceled checks, safe deposit box records and safe deposit box keys, financial statements, balance sheets, ledgers, and invoices.

d. Tax Returns and records: Any and all records and documents relating to any tax returns for Stag Arms, LLC, reflecting any income made from the operation of Stag Arms, LLC or the absence thereof, including copies of state

and federal income tax returns and records related to the preparation of state and federal income tax returns.

e. Unlawful Firearms: Any and all firearms the possession of which is illegal under state or federal law and/or not in compliance with federal law and regulations concerning the manufacture and sale of firearms.

f. Photographs and Video: Any and all photographs, video, surveillance tapes or other visual depictions of firearms or other materials relating to violations of the aforementioned statutes. I further seek authority for agents executing the search warrant to take photographs and/or videotape of the premises and areas searched.

g. Computers, Computer Hardware, Storage Devices and Electronic Documents.

## COMPUTERS, ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22. As described above and in the attachment, this application seeks permission to search for records that might be found on the identified premises, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive, electronic storage devices or other storage media as explained above. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e) (2) (B).

23. Based on my training and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed

via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

24. I submit that if computers, electronic storage devices or storage media as described above are found on the premises, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space-that is, in space on the storage medium that is not currently being used by an active file-for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media-in particular, computers' internal hard drives-contain electronic evidence

–11–

of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

25. Forensic Evidence. As further described in the attachments, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how any computers, electronic storage devices and other storage media were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any computer, electronic storage device or storage medium located on or in the premises because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can

leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. Forensic evidence on a computer or storage medium can also indicate who has used or controlled the computer or storage medium. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time.

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw

conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f. I know that when an individual uses a computer to further criminal activity, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality

–14–

of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

26. <u>Necessity of seizing or copying entire computers or storage media</u>. In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer, electronic storage device or other storage media has been used, what it has been used for, and who has used it requires considerable time, and taking

that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements. Computers, electronic storage devices or other storage media can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

27.     Nature of examination.   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrants I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

28.     Because several people work at the business that is the subject of this warrant, it is possible that the subject premises will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime.  If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

29.     Finally, I request that this affidavit, the search warrant application, and the search warrant, along with the materials attached hereto, be sealed until further order of the Court since disclosure of these materials at this time would seriously jeopardize the ongoing investigation. The government further asks the Court to direct the United States Attorney's Office to maintain this affidavit, the search warrant application, and the search warrant, along with the materials attached hereto in its possession until the Court orders that the documents be filed with the Clerk of the Court or until the matter under investigation has become public.

30.    The foregoing is true and correct to the best of this Applicant's knowledge.

JOANNA LAMBERT
SPECIAL AGENT
BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES


Subscribed and sworn to before me this 2 day of September 2014, at Hartford, Connecticut.

HONORABLE THOMAS P. SMITH
UNITED STATES MAGISTRATE JUDGE

–18–